**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3561-22

VELOCITY INVESTMENTS LLC
ASSIGNEE OF WEBBANK,

    Plaintiff-Respondent,

v.

MORDECHAI GROSS,

    Defendant-Appellant.

_____

Submitted May 29, 2024 – Decided July 19, 2024

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2591-22.

Michael M. Steinmetz, attorney for appellant.

Ragan & Ragan, PC, attorneys for respondent (Walter Peter Ragan, Jr., on the brief).

PER CURIAM

    In this debt collection case, defendant Mordechai Gross appeals from a

June 9, 2023 Law Division order denying his motion to vacate a May 13, 2023

final judgment entered in favor of plaintiff Velocity Investments LLC Assignee of Webbank. Because defendant defaulted on the underlying loan within the meaning of the parties' stipulation of settlement, we affirm.

The facts and procedural history are not complicated. In May 2018, defendant obtained a $50,000 loan from Cross River Bank, which later conveyed the loan to Upstart Network, Inc. After making ten payments, in April 2019, defendant defaulted on the loan. Upstart Network then charged off the loan and sold the outstanding $49,597.36 debt obligation to plaintiff.

In its ensuing complaint, plaintiff demanded judgment in full and costs of suit. After defendant failed to answer the complaint, the court entered default. See R. 4:43-1. Defendant – a self-represented attorney – then contacted plaintiff's counsel and negotiated a $20,000 settlement, payable over five $2,500 installments by certain dates between April 30 and June 30, 2023, and a final $7,500 payment by July 15, 2023.

Pertinent to this appeal, the March 13, 2023 stipulation of settlement provided, in relevant part:

> 4. The time of payment is the date of receipt thereof by . . . [p]laintiff's counsel, not the date of mailing and/or transmittal by . . . [d]efendant. The burden of proof of such timely payment and receipt thereof by [p]laintiff's counsel shall rest upon . . . [d]efendant. . . .

2

5. In the event that any of . . . [d]efendant['s] checks are returned by the bank[,] . . . [d]efendant shall be considered to be in default. <u>Should . . . [d]efendant default in tendering any one payment, for a period of 5 days, judgment will be entered in favor of . . . [p]laintiff and against . . . [d]efendant upon [c]ertification of [c]ounsel, without motion or notification to . . . [d]efendant for the full amount sought in the [c]omplaint,</u> (which may be more than the settled amount) plus interest and costs of suit, less any payments made to the date of default.

6. . . . Defendant hereby acknowledges that there is no grace period other than what is set forth above in paragraph five and <u>if payment is not timely received</u> or if payment is returned for insufficient funds . . . [p]laintiff **will proceed** <u>with the entry of judgment without further notice</u> and any payments received after the payment date said payment will be applied to the full balance due. . . . Defendant further acknowledges and understands that he has had the opportunity to review this [s]tipulation with an attorney of his choosing and that this is a binding agreement and that there will be no exceptions or extensions and time is of the essence. . . .

[(Emphasis added).]

Defendant failed to make the first payment. Consistent with paragraph five of the agreement, plaintiff moved ex parte for entry of judgment. On May 13, 2023, the court issued judgment for plaintiff in the amount of $49,597.36, plus costs.

The following month, the court denied defendant's motion to vacate the judgment. In a terse statement of reasons annexed to the June 9, 2023 order, the court summarily concluded: "Good cause for the relief requested not established. The [s]tipulation of [s]ettlement sign [sic] by the moving party and filed with the [c]ourt on March 13, 2023 is clear and unambitious [sic]." This appeal followed.

"The decision granting or denying an application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994); see also U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (stating a trial court's determination under Rule 4:50-1 "warrants substantial deference and should not be reversed unless it results in a clear abuse of discretion"). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. INS., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Rule 4:50-1 is "designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Mancini v. EDS,

132 N.J. 330, 334 (1993). The rule establishes six alternative grounds for relief from a final judgment, whether obtained by default or after trial.[1] Although courts generally "use Rule 4:50-1 sparingly, in exceptional situations," Hous. Auth. of Morristown, 235 N.J. at 289, "motions for relief from default judgments . . . are liberally viewed," Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:50-1 (2024). Equitable principles should guide the court's analysis

---

[1] Rule 4:50-1 provides:

On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R[ule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

A-3561-22

regardless of the subsection. MTAG v. Tao Invs., LLC, 476 N.J uper. 324, 333 (App. Div. 2023) (quoting F.B. v. A.L.G., 176 N.J. 201, 207 (2003)).

Defendant argues the court abused its discretion by failing to vacate the "default judgment" under Rule 4:50-1. In particular, he claims plaintiff's failure to notice him of its post-settlement motion to obtain judgment constituted excusable neglect under subsection (a), and the equities merit relief under subsection (f). Alternatively, defendant asserts the lack of notice was "an exceptional circumstance that mitigate[d] in favor of vacating the default judgment."

As a threshold matter, the May 13, 2023 judgment was not a "default judgment" within the meaning of Rule 4:43-2 (providing final judgment by default for failure to answer a complaint under Rule 4:43-1). Instead, judgment was entered pursuant to the terms of the parties' stipulation of settlement which, under paragraphs five and six, expressly permitted the entry of judgment for untimely payments, without notice to defendant. See, e.g., Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (recognizing a settlement agreement is a contract); see also Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (holding "[a]s a general rule, courts should enforce contracts as the parties intended").

A-3561-22

In any event, under subsection (a) of Rule 4:50-1, our Supreme Court has underscored, "[i]t would create a rather anomalous situation if a judgment were to be vacated on the ground of mistake, accident, surprise or excusable neglect, only to discover later that the defendant had no meritorious defense." That is because "[t]he time of the courts, counsel and litigants should not be taken up by such a futile proceeding." U.S. Bank Nat'l Ass'n, 209 N.J. at 469 (quoting Schulwitz v. Shuster, 27 N.J. Super. 554, 561 (App. Div. 1953)). In the present matter, defendant has not proffered any grounds supporting a meritorious defense under subsection (a). Nor has defendant demonstrated the equities favor vacating the judgment under subsection (f).

In reply to plaintiff's argument that the stipulation of settlement is clear and unambiguous, defendant argues a closer inspection of the agreement reveals it is limited and unclear, "as it does not outright state that other forms of delayed payment, separate from banking issues, would lead to default." Defendant contends had the parties intended to establish an absolute default provision, it would have been explicitly stated in the agreement. Defendant strains to create an ambiguity where none exists.

A court's task is not to "torture the language of [a contract] to create ambiguity." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div.

7

2002) (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). Rather, courts look to the plain terms of the contract and declare the meaning of what is already written, not what, in hindsight, may have been written. See Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001) (explaining a court's task is not to rewrite a contract for the parties better than or different from the one they wrote for themselves).

Here, the language of the agreement is clear, permitting plaintiff to obtain "the entry of judgment without further notice" for either of two reasons: "if payment is not timely received or if payment is returned for insufficient funds." See Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009) (recognizing "a basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner"). Common sense dictates that the stipulation of settlement's plain language left no room for confusion as it clearly specified the due dates for each payment and the consequences of default. Moreover, although defendant was self-represented, he was a licensed attorney who initiated negotiations with plaintiff's counsel and, as stated in the agreement, was provided an opportunity to consult with counsel before assenting to its terms.

Nor are we persuaded by defendant's belated argument that the agreement's grace period evinced the parties' "mutual understanding of [its] flexible payment terms." Referencing plaintiff's "consistent acceptance of late payments without objection," defendant claims plaintiff waived "strict adherence [of] the original payment schedule." Defendant's argument is belied by the terms of the agreement, which expressly stated the consequences of untimely payment. We therefore discern no reason to disturb the June 9, 2023 order.

We would be remiss, however, if we overlooked the court's failure to comply with Rule 1:7-4(a). Although the issue was not raised by the parties, the court's two-sentence decision falls short of the requirements set forth in the rule. Rule 1:7-4(a) requires "the court . . . find the facts and state its conclusions of law . . . on every motion decided by a written order that is appealable as of right." See Curtis v. Finneran, 83 N.J. 563, 570 (1980) (recognizing "the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions" as required by Rule 1:7-4).

Although we do not endorse the court's failure to fully comply with Rule 1:7-4 in this case, its terse findings have not impeded our review. Moreover, we are mindful a remand for the court to comply with the rule would cause further

delay in concluding the matter and cost the parties additional counsel fees. We nonetheless take this opportunity to remind trial courts of their obligation under the rule.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

10