**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2223-17T2

IN THE MATTER OF
PROCEEDINGS BY THE
COMMISSIONER OF BANKING
AND INSURANCE, STATE OF
NEW JERSEY TO FINE CHARLES
BOAS PURSUANT TO THE NEW
JERSEY INSURANCE FRAUD
PREVENTION ACT, N.J.S.A.
17:33A-1 to -30.

_____

Submitted January 30, 2019 – Decided February 22, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from the New Jersey Department of Banking and Insurance.

Brach Eichler LLC, attorneys for appellant Charles Boas (Keith J. Roberts, of counsel and on the briefs; Shannon M. Carroll, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Banking & Insurance (Melissa H. Raksa, Assistant Attorney General, of counsel; Adam B. Masef, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Charles Boas appeals from New Jersey Department of Banking and Insurance (Department) orders denying his motion to vacate a final order directing that he pay $500,000 in civil and administrative penalties for his submission of 1011 fraudulent insurance claims, a $1000 statutory insurance fraud surcharge, $53,384.52 in restitution and $3459 in attorneys' fees, and denying his motion for reconsideration. Based on our review of the record in light of the applicable law, we are convinced the Department's orders are supported by substantial credible evidence and are not arbitrary, capricious or unreasonable, and affirm.

I.

Boas is a licensed chiropractor in the State of New Jersey. In 2012, he was charged in an indictment with sixty counts of second-degree health care claims fraud, N.J.S.A. 2C:21-4.3(a), and one count of third-degree theft by deception, N.J.S.A. 2C:20-4, for allegedly billing Horizon Blue Cross Blue Shield (Horizon) for services he did not render. In April 2014, Boas pleaded guilty to third-degree health care claims fraud and was sentenced in July 2014 to a two-year term of probation.

A. The Order To Show Cause

In September 2014, the Department's Commissioner commenced an administrative proceeding by filing an order to show cause alleging Boas violated N.J.S.A. 17:33A-4(a)(1), which in pertinent part provides that a person violates the New Jersey Insurance Fraud Protection Act (Act)[1] by "[p]resent[ing] or caus[ing] to be presented any written or oral statement as part of, or in support of . . . a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim."

The order to show cause alleged that from 2003 to 2007 Boas submitted claims for insurance payments to Horizon for chiropractic services he did not provide. More particularly, count one of the order to show cause alleged Boas submitted claims for payment for 498 dates of service for patient A.O.[2] from 2003 through 2007 and received $28,962.40 in payments from Horizon, but A.O. had only seen Boas a total of seven to fourteen times and had not seen Boas since 2004. Count two alleged Boas submitted claims to Horizon for 531 dates of service between June 2003 and January 2007 for patient A.O., Jr., and

---

[1] N.J.S.A. 17:33A-1 to -30.

[2] We identify the putative patients by use of initials to protect their privacy.

received $16,759 from Horizon, but Boas provided treatment to A.O., Jr., during only two to three months in 2003. In count three, it was alleged Boas submitted seventy-two claims to Horizon for dates of service between October 2005 and July 2006 for E.M. and received $4650 in payments from Horizon, but Boas only saw E.M. for an initial consultation and never saw E.M. again. Count four alleged Boas submitted claims for providing services to E.M., Jr., on fifty-eight separate dates and received $3013.12 from Horizon, but E.M., Jr., "had never been treated by Boas."

The order to show cause set forth the statutory penalties and surcharge that could be imposed for the alleged violations, and explained Boas was liable for the Department's attorneys' fees and restitution of the sums he received from Horizon for services he did not provide. The order to show cause further explained that Boas had twenty days from his receipt of the order to show cause to request a hearing and that, if he failed to do so, his right to a hearing would be deemed waived and the allegations would be deemed admitted.

The Department served, and Boas received, the order to show cause in September 2014.[3] The Department again served Boas with the order to show

---

[3] The order was served on Boas by certified mail on September 26, 2014.

A-2223-17T2

cause in December 2014,[4] and at that time informed Boas that if he did not respond within seven days, his right to a hearing would be deemed waived and the Commissioner would dispose of the matter.

Boas failed to respond to the order to show cause. On November 16, 2015, the Commissioner rendered a final agency decision, entering a detailed final order finding Boas violated the Act by submitting at least 1011 fraudulent claims for payment to Horizon for services he did not provide. The final order also directed that Boas pay $500,000 in civil and administrative penalties pursuant to N.J.S.A. 17:33A-5 and N.J.A.C. 11:16-7.6, a $1000 statutory insurance fraud surcharge in accordance with N.J.S.A. 17:33A-5.1, $3459 in attorneys' fees pursuant to N.J.S.A. 17:33A-5(c) and N.J.A.C. 11:16-7.9(c), and $53,384.52 in restitution pursuant to N.J.S.A. 17:33A-5(c) and N.J.A.C. 11:16-7.9(c).

B.  Boas's Motion To Vacate The Final Order

Four months later, in March 2016, Boas filed a motion to vacate the final order. In support of the motion, Boas submitted a certification asserting that upon his receipt of the order to show cause on September 26, 2014, he called the attorney who represented him in the criminal proceeding, forwarded the order to show cause to the attorney by telefax, and was assured by the attorney that he

_____

[4]  The order was served on Boas by certified mail on December 14, 2014.

"would handle the matter." Boas also certified that he received the December 2014 "second notice" concerning the order to show cause and forwarded it by telefax to the attorney. Boas annexed to his certification telefax transmission receipts he claimed confirmed that he forwarded the order to show cause to the attorney in September and December 2014.

Boas also certified that, "[o]ver time, [he] received assurances from [the attorney] that [the administrative] matter would be handled." He said the attorney "eventually requested an additional retainer" to represent Boas in the matter and that he paid the attorney $2000 "to represent [him] on this matter and a matter before the Board of Chiropractic Examiners." Boas annexed to his certification a July 6, 2015 check in the amount of $2000 that is payable to the attorney.

Boas further certified that when he learned of the November 2015 final order, he "was shocked to learn that the application was unopposed" because he had the attorney's "assurances that [he] was being represented on this matter." Boas stated that he "reached out to" the attorney but "did not receive a response." According to Boas, he then retained different counsel.

Boas's certification offered the conclusory assertion that he "had a clear defense to this case." He did not identify the putative defense or provide any

facts supporting a defense to the allegations contained in the order to show cause.

The Department opposed Boas's motion, arguing he failed to make any showing, beyond his bald assertion, that he had a meritorious defense to the allegations in the order to show cause. The Department also argued Boas did not demonstrate excusable neglect for his failure to respond to the order to show cause because the telefax reports he supplied do not identify the documents sent to the attorney and Boas did not exercise reasonable diligence by following up with his attorney after service of the order to show cause in September and December 2014 and prior to entry of the final order in November 2015. The Department claimed Boas did not provide a retainer agreement showing the attorney was retained to represent him in the Department's proceeding and there was no evidence corroborating Boas's claim the $2000 check was for his retention of the attorney for the Department's proceeding.

In a detailed and comprehensive November 7, 2016 written order, the Commissioner denied Boas's motion to vacate the final order. The Commissioner noted that although the New Jersey Court Rules do not govern administrative agency proceedings, agencies have used the principles in the Rules as a guide to determine requests for relief from final orders. In his

A-2223-17T2

consideration of Boas's motion to vacate the final order, the Commissioner utilized Rule 4:50-1 as a guide. Indeed, in support of his motion to vacate, Boas argued he was entitled to relief from the final order under the principles in Rule 4:50-1(a), which allows relief from a final order due to "mistake, inadvertence, surprise, or excusable neglect." To obtain relief from a default judgment under Rule 4:50-1(a), a moving party must demonstrate "that the neglect to answer was excusable under the circumstances and that he [or she] has a meritorious defense." Bernhardt v. Alden Café, 374 N.J. Super. 271, 277 (App. Div. 2005) (quoting Mancini v. EDS, 132 N.J. 330, 334 (1993)).

The Commissioner determined that "a default judgment will not be disturbed unless the failure to answer or otherwise appear and defend was excusable under the circumstances and unless the defendant has a meritorious defense[,] either to the cause of action itself, or . . . to the quantum of damages." The Commissioner noted that in his motion to vacate the final order, Boas did not challenge the penalties imposed and failed to present any evidence establishing a meritorious defense to the charges in the order to show cause. The Commissioner further determined Boas did not establish excusable neglect for his failure to timely respond to the order to show cause because he did not indicate when his purported conversations with the attorney occurred or what

"assurances" the attorney provided, the $2000 check to the attorney is dated eight months after Boas received the December 2014 second notice concerning the order to show cause, and there is no evidence the check was a retainer for the attorney's services in this matter because Boas did not provide a retainer agreement. The Commissioner also found Boas did not provide an "adequate explanation as to what happened during the [fourteen] months or so in between September 26, 2014, when Boas certifie[d] . . . he first sent the [order to show cause] to [the attorney], and November[] 2015, when the [f]inal [o]rder was issued," made no showing he followed up with the attorney or inquired concerning the status of the matter, and offered no evidence showing he took any affirmative action to ensure that a defense to the charges in the order to show cause was timely presented. The Commissioner concluded Boas "fail[ed] to satisfy the standard" for relief from the final order "set forth in [Rule] 4:50-1(a)"[5] and denied Boas's motion.

C.  Boas's Motion For Reconsideration

Boas subsequently filed a motion for reconsideration. In support of the motion, Boas submitted a certification from counsel he retained following his

---

[5]  The Commissioner also found that Boas did not establish an entitlement to relief under Rule 4:50-1(f). Boas does not argue on appeal that finding was in error.

receipt of the November 2015 final order. Counsel certified that upon his retention, the motion to vacate the final order was filed "expeditiously" after he unsuccessfully attempted to obtain the Department's agreement to a consent order vacating the final order.

Boas also submitted a certification supporting his reconsideration motion. He asserted for the first time that he had the following meritorious defense to the charges in the order to show cause: "[he] never intentionally billed for treatment, which was not rendered," and he did not "wrongfully bill[] for treatment to" the four individuals identified in the order to show cause. He also noted that the patients identified in the order to show cause are different from those patients listed in the charges in the indictment against him.

In his reconsideration motion, Boas also challenged for the first time the penalties and reimbursement the Department required. Boas further asserted that he and his wife had already paid Horizon $146,000,[6] and that the civil and administrative penalties "have no relation to the amount allegedly paid" to him by Horizon for the services the Department asserts he did not provide.

---

[6] Boas stated he "was audited by Horizon and as a result of irregularities in [his] notes, [he] . . . return[ed] $82,000 to Horizon." In addition, Boas claimed his wife "overpaid Horizon $64,000, which was never returned."

The Commissioner issued a lengthy and detailed order denying Boas's motion for reconsideration, finding Boas "failed to demonstrate that there is good cause to reopen or reconsider the default [f]inal [o]rder." The Commissioner found Boas did "not establish[] the necessary grounds for reconsideration" and "failed to demonstrate that [the order denying his motion to vacate the final order] was based upon a palpably incorrect or irrational basis or that there was a failure to consider, or appreciate the significance of probative, competent evidence." The Commissioner further observed that "Boas improperly raise[d] additional arguments that were ascertainable at the time that Boas originally moved to vacate." The Commissioner found that, although Boas claimed he "billed in accordance with the treatment provided" and "would never have intentionally submitted false claims," Boas again offered "no legal or substantive response, other than this bald refutation without any evidentiary support" demonstrating a meritorious defense to the charges in the order to show cause.

Boas argued, for the first time, he could not properly defend himself and provide a meritorious defense because he could not review the applicable patient charts and bills. The Commissioner found these arguments "inadequate and unpersuasive" because "Boas had adequate information and a substantial period

11

of time to attempt to at least formulate a response," and "Boas had control over the records of the claims that he submitted and could have attempted to answer based upon the [patient] initials" in the order to show cause. The Commissioner also found Boas could have "requested further information from [the Department] at any time, but he did not do so."

The Commissioner determined Boas "failed to demonstrate that he has a meritorious defense," and rejected his assertion that the Commissioner improperly relied on his criminal conviction in denying his motion to vacate the final order. The Commissioner explained that although the order denying the motion to vacate stated "that Boas pleaded guilty to committing [t]hird[-d]egree [i]nsurance [f]raud and admitted to engaging in similar conduct as he did in the underlying allegations [of the order to show cause]," the order also noted that the factual circumstances alleged in the indictment and the order to show cause involved different time frames and alleged patients. Thus, the Commissioner found that the reference to Boas's guilty plea was "afforded no weight" and was irrelevant to the denial of Boas's motion to vacate the final order.

In support of his reconsideration motion, Boas also argued for the first time that the Act requires a demonstration of intent, which he claimed was not proven. The Commissioner found Boas improperly raised the argument for the

first time in his reconsideration motion because it could have been asserted in support of his motion to vacate the final judgment. The Commissioner also found that the evidence supporting the order to show cause showed Boas sought payment from Horizon on at least 1011 claims for treatment that was not rendered, and those circumstances present "objective facts within his knowledge, and therefore a demonstration of intent need not be demonstrated."

The Commissioner also noted that Boas argued for the first time on his reconsideration motion that the $500,000 in civil and administrative penalties was "inequitable and without basis in the record" because he was paid only a total of $53,384.52 by Horizon on the 1011 false claims submitted. The Commissioner explained that Boas "was exposed to a substantially higher fine" under the statute with a maximum exceeding $15,000,000.

The Commissioner also analyzed the seven factors that must be considered in determining the reasonableness of civil penalties under the Act pursuant to Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 137-39 (1987): (1) the defendant's good or bad faith; (2) defendant's ability to pay; (3) the amount of profits defendant obtained from the illegal activity; (4) the injury to the public; (5) duration of the conspiracy; (6) the existence of criminal or treble damages actions; and (7) past violations. In particular, the Commissioner noted the

13

severe harm to the public resulting from a medical professional committing fraud; that Boas acted in bad faith because, with the number of claims submitted, he could not have reasonably thought his actions were lawful; an inability to pay can be outweighed by the other factors; the fraudulent conduct spanned a four-year period and resulted in over $50,000 in payments for false claims; Boas has a conviction for insurance fraud, though unrelated to this matter; and a $500,000 penalty was well below the maximum potential penalty authorized by the Act. The Commissioner concluded the civil and administrative penalty imposed "was reasonable and necessary for Boas'[s] repeated acts of insurance fraud. Such a significant penalty demonstrates the appropriate level of opprobrium for such illegal conduct and serves to deter future acts of insurance fraud by Boas and [the] public at large."

The Commissioner denied the motion for reconsideration, entered an order and this appeal followed.

## II.

Our review of the Commissioner's final agency decision is limited. In re Herrmann, 192 N.J. 19, 27 (2007). We will not upset an agency's final quasi-judicial decision absent a "clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Id. at 27-28. This same

deferential standard applies to our review of the agency's choice of a disciplinary sanction. Id. at 28. We "accord substantial deference to an agency head's choice of remedy or sanction." Id. at 34-35 (quoting Div. of State Police v. Jiras, 305 N.J. Super. 476, 482 (App. Div. 1997)).

We review discipline only to determine whether the "punishment is so disproportionate to the offense, in the light of all of the circumstances, as to be shocking to one's sense of fairness." In re Stallworth, 208 N.J. 182, 195 (2011) (citation omitted). Moreover, as our Supreme Court has "cautioned, courts should take care not to substitute their own views of whether a particular penalty is correct for those of the body charged with making that decision." In re Carter, 191 N.J. 474, 486 (2007). Measured against these standards, we find no basis to reverse the Commissioner's orders denying Boas's motions to vacate the final order and for reconsideration.

In the first instance, it is necessary to observe that the arguments Boas presented to the Commissioner in support of his motion to vacate the final order were limited. He argued only that there was excusable neglect for his failure to respond to the order to show cause because he spoke to an attorney and received "assurances" the attorney would "handle" the matter. Boas did not provide any

facts supporting a meritorious defense to the allegations in the order to show cause other than a conclusory assertion that he had a "clear defense."

Since the entry of the Commissioner's order denying his motion to vacate the final order, Boas has engaged in a consistent and gradual effort to ignore the record he presented in support of his motion by adding arguments and contentions in his motion for reconsideration and now on appeal that were simply never presented to the Commissioner in the first instance. For example, in support of his reconsideration motion he argued the civil and administrative penalty imposed was excessive,[7] and that he had a defense to the allegations in the order to show cause because he did not intend to overbill the patients. But those arguments were never presented in support of his motion to vacate the final order. Similarly, on appeal, he adds claims never asserted before the motion court, including that the final order should have been vacated because the allegations in the order to show cause were based on a faulty investigation.

Our consideration of the Commissioner's order on Boas's motion to vacate the final order is, however, limited to the record presented to the Commissioner when the motion was made and decided. See, e.g., Capital Fin. Co. of Del.

---

[7] In the order denying Boas's motion to vacate the final order, the Commissioner noted "Boas does not challenge the quantum of the sanctions imposed."

Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (explaining the validity of a court or agency's determination on a motion for reconsideration is limited to the record presented at the time of the initial motion); see also Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (explaining that reviewing courts "will decline to consider questions or issues not properly presented [below] . . . when [the] opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the [proceeding] or concern matters of great public interest'" (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959))); In re Stream Encroachment Permit, Permit No. 0200-04-0002.1 FHA, 402 N.J. Super. 587, 602 (App. Div. 2008) (noting we will not consider issues that were not raised before an administrative agency unless they are of public importance).  Thus, in our analysis of the Commissioner's order denying Boas's motion to vacate the final order, we do not consider information or arguments Boas first presented in support of his reconsideration motion or which he attempts to inject in the record for the first time on appeal.

Boas argues the Commissioner's denial of his motion to vacate the final judgment was arbitrary, capricious and unreasonable and lacks support in the record.  Boas asserts he has meritorious defenses to the allegations in the order

17

to show cause based on the purported Department errors and miscalculations and there was otherwise good cause to vacate the final order. As noted, however, we do not consider his claims there were errors in the Department's investigation supporting meritorious defenses to the allegations in the order to show cause because he failed to present those claims to the Commissioner in support of his motion to vacate the final order and they do not go to the Commissioner's jurisdiction or raise issues of public importance. Nieder, 62 N.J. at 234; see also Abbott v. Burke, 119 N.J. 287, 390 (1990) (finding it "unfair" to consider a claim on appeal that "was apparently never explicitly advanced as a claim until the hearing had concluded" before an administrative agency).

Boas does not dispute that the Commissioner properly considered his motion to vacate the final judgment under the principles governing Rule 4:50-1(a), but argues the court erred in its application of those principles because he demonstrated excusable neglect and a meritorious defense. See Marder v. Realty Constr. Co., 84 N.J. Super. 313, 318 (App. Div. 1964) ("Generally, a defendant seeking to reopen a default judgment must show that the neglect to answer was excusable under the circumstances and that he has a meritorious defense.").

The decision whether to grant a motion to vacate a default judgment under Rule 4:50-1 is accorded substantial deference and will not be disturbed absent a "clear abuse of discretion." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994); see also Mancini, 132 N.J. at 334 (finding the decision to vacate a default judgment is "left to the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion"). "The rule is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Manning Eng'g, Inc. v. Hudson Cty. Park Comm'n, 74 N.J. 113, 120 (1977). There is an abuse of discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

Motions to vacate default judgments should be viewed "with great liberality." Mancini, 132 N.J. at 334 (quoting Marder, 84 N.J. Super. at 319). "All doubts . . . should be resolved in favor of the parties seeking relief." Ibid. That is so because of the importance we attach to securing a decision on the

merits. Davis v. DND/Fidoreo, Inc., 317 N.J. Super. 92, 100-01 (App. Div. 1998).

However, to prevail on a motion to vacate a judgment under Rule 4:50-1(a), a party is "compelled to prove the existence of a 'meritorious defense,'" Guillaume, 209 N.J. at 469 (2012) (quoting Little, 135 N.J. 284), because "[i]t would create a rather anomalous situation if a judgment were to be vacated on the ground of . . . excusable neglect, only to discover later that the defendant had no meritorious defense," ibid. (first alteration in original) (quoting Shulwitz v. Shuster, 27 N.J. Super. 554, 561 (App. Div. 1953)); see also Shulwitz, 27 N.J. Super. at 561 (requiring the showing of a meritorious defense so "[t]he time of the courts, counsel and litigants [is] not . . . taken up by . . . a futile proceeding"). A court is required to "examine defendant's proposed defense to determine its merit." Bank of N.J. v. Pulini, 194 N.J. Super. 163, 166 (App. Div. 1984).

The record presented to the Commissioner on Boas's motion to vacate the final order is bereft of any evidence supporting a meritorious defense to the allegations in the order to show cause. For that reason alone, we are convinced the Commissioner did not abuse his discretion by finding Boas failed to establish

an entitlement to relief from the final order and denying his motion to vacate the order.

Moreover, the Commissioner's finding Boas failed to demonstrate excusable neglect for his failure to respond to the order to show cause is supported by the record presented when the motion was decided. Boas contends he established excusable neglect based on vague references to his attorney's assurances he would handle the order to show cause. But the Commissioner aptly found that Boas failed to detail any action he took "to ensure that a defense against the Department's charges . . . was presented" during the eight months after he was first served with the order to show cause and before the $2000 payment Boas asserts was a retainer for the attorney's representation. The Commissioner further found that Boas presented no evidence confirming the payment was for the attorney's retention to defend Boas in connection with the order to show cause or establishing he made any effort prior to the entry of the final order to ensure a response to the allegations was filed or to learn about the status of the matter.

Indeed, Boas's certification demonstrates his putative attorney's alleged assurances could not be reasonably relied upon to ensure that a response to the order to show cause was, or would be, filed. Boas certified that he sent the

September 2014 order to show cause to the attorney and received assurances the attorney would "handle" the matter, but in December 2014 Boas was served with the order to show cause again with a notice that if he did not respond in seven days, the Commissioner would dispose of the matter. Thus, Boas knew in December 2014 that his putative attorney's alleged assurances were not true, but his certification offered no explanation why he thereafter assumed the same attorney would actually file a response to the order to show cause or why he took no steps to ensure the attorney did so.

The Commissioner's findings support his determination that Boas failed to demonstrate excusable neglect for his failure to respond to the order to show cause. Boas's certification did not demonstrate that his failure to respond to the order to show cause "was 'attributable to an honest mistake that is compatible with due diligence.'" Guillaume, 209 N.J. at 468 (quoting Mancini, 132 N.J. at 335). As observed by the Commissioner, "[m]ere carelessness or lack of proper diligence on the part on an attorney is ordinarily not sufficient to entitle his clients to relief from an adverse judgment in a civil action." Baumann v. Marinaro, 95 N.J. 380, 394 (1984) (alteration in original) (quoting In re T., 95 N.J. Super. 228, 235 (App. Div. 1967)).

We are not persuaded by Boas's reliance on <u>Regional Construction Corp.</u> <u>v. Ray</u>, 364 N.J. Super. 534 (App. Div. 2003). In <u>Ray</u>, the motion court vacated a default judgment because the defendant's supporting certification showed he had other pending litigation involving related claims and parties, forwarded the new complaint to the attorney handling those matters and assumed the attorney would interpose a defense. <u>Id.</u> at 538-40. The defendant's supporting certification also included facts demonstrating meritorious defenses. <u>Id.</u> at 539.

The plaintiffs in <u>Ray</u> did not challenge the motion court's finding that the defendant demonstrated excusable neglect and a meritorious defense supporting relief from the default judgment. <u>Id.</u> at 537, 541. The issue on appeal was whether the motion court properly imposed a condition for granting relief from the default judgment. <u>Id.</u> at 541. Our finding that "there were sufficient grounds for the vacating of the default judgment" was based solely on the information contained in the defendant's supporting certification which "seem[ed] reasonably sufficient to constitute excusable neglect." <u>Ibid.</u>

Here, Boas's supporting certification did not demonstrate any meritorious defenses to the order to show cause and, as the Commissioner found, Boas failed to provide sufficient details concerning his actions, and those of his putative attorney, to demonstrate a mistake compatible with due diligence. Contrary to

23

Boas's contention, in <u>Ray</u> we did not decide that vague assurances from a putative attorney that are unsupported by other evidence demonstrate excusable neglect. In addition, in <u>Ray</u>, there was no evidence the defendant had reason to question his assumption that his attorney would file a response to the complaint. In contrast, Boas's certification established he had every reason to doubt that his putative attorney would file a response to the order to show cause. Boas knew in December 2014 that despite his attorney's alleged assurances, no response was filed to the order to show cause when it was first served in September.

In sum, Boas fails to demonstrate the Commissioner's findings and decision denying the motion to vacate were made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." <u>Guillaume</u>, 209 N.J. at 467-68 (quoting <u>Iliadis</u>, 191 N.J. at 123). To the contrary, the Commissioner's findings are supported by the scant evidence Boas presented in support of his motion to vacate, are founded on established principles and do not rest on any impermissible bases. We therefore affirm the Commissioner's denial of Boas's motion to vacate the final order.

We also affirm the Commissioner's denial of Boas's motion for reconsideration. We again note that Boas's reconsideration motion was founded on numerous arguments, including those related to the amount of the penalties

24

imposed and purported meritorious defenses, that were simply never presented to the Commissioner in support of the motion to vacate the default judgment. It was appropriate for the Commissioner to reject Boas's arguments, asserted for the first time on his motion for reconsideration. Capital Fin. Co. of Del. Valley, 398 N.J. Super. at 310 (explaining a motion for reconsideration reviews an order "based on the evidence before the court on the initial motion" and does not "serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record").

The remaining arguments made in support of the reconsideration motion constituted a mere rehashing of the limited contentions Boas presented in support of his motion to vacate the final order. For the reasons already explained, the Commissioner correctly addressed those arguments in his denial of the motion to vacate the final judgment. Ibid. ("Reconsideration cannot be used to . . . reargue a motion.").

We last address Boas's argument that the sanction imposed by the Commissioner is inequitable. To be sure, the $500,000 penalty imposed by the final order is substantial. However, the penalty was imposed by the Commissioner's final order, and Boas did not address the penalty or claim he had a meritorious defense to the penalty in his motion to vacate the final order.

25

Thus, he effectively raises the issue of his purported meritorious defense to the final order's imposition of the penalty for the first time on appeal. Because the issue does not pertain to the Commissioner's jurisdiction or any issue of public importance, we will not address the merits of Boas's claim the penalty is inequitable. Nieder, 62 N.J. at 234. We add only that, given the substantial deference we afford an agency's choice of remedy or sanction, Herrmann, 192 N.J. at 34-35, and all of the circumstances found by the Commissioner in the final order, we do not find the penalty, imposed for Boas's 1011 violations of the Act occurring over a four-year period, "is so disproportionate to the offense . . . as to be shocking to one's sense of fairness." Stallworth, 208 N.J. at 195 (citation omitted).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION